UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DANIEL MATTHEW VOORHEES
a/b/o M/Y BROADWATER, and
BROADWATER MARINE, LTD.,

                        Plaintiffs,

v.                                              **Case No. 15-cv-1193-pp**

**ACE AMERICAN INSURANCE COMPANY,**

                        Defendant.

---

**DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO STAY AND COMPEL ARBITRATION (DKT. NO. 5)**

---

The plaintiffs, owners of the yacht M/Y Broadwater, filed a complaint in Milwaukee County Circuit Court alleging breach of contract and related causes of action regarding their coverage under a recreational marine insurance policy issued by the defendant. Dkt. No. 1-1. The defendant removed this case to this court, and filed a motion to stay the litigation and compel arbitration pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 3. Dkt. Nos. 1, 5. The court will grant the motion.

### I. Factual Background[1]

The plaintiffs purchased M/Y Inevitable (renamed M/Y Broadwater), a 1990 163-foot Feadship custom motor yacht. Plaintiff Daniel Matthew

---

[1] Because the defendant failed to cite the rule to which the motion was made, plaintiffs have responded as if defendant had filed a motion for summary judgment. The court has taken the jurisdictional facts from the complaint; however, all other facts have been taken from the parties' submissions in conjunction with the defendant's motion. In any event, the parties do not dispute the defendant's actions taken in response to the plaintiffs' claims.

1

Voorhees is a citizen of the District of Columbia. Dkt. No. 1 at ¶1. Plaintiff Broadwater Marine Ltd. is a holding company incorporated in the Cayman Islands, and has its principal place of business there. Id. at ¶2. Defendant ACE American Insurance Company is a Pennsylvania corporation with its principal place of business in Philadelphia. Id. at ¶3.

In March 2014, a sea trial and extensive pre-purchase survey of the yacht were conducted in Fort Lauderdale, Florida; neither disclosed any engine or power issues. Id. at ¶9. In April 2014, the plaintiffs purchased the yacht moored in Nassau, Bahamas for $9.5 million, id. at 8, and had a $450,000 contract to charter the yacht to Millennium Charters in West Palm Beach, Florida, id. at 13.

After reviewing the yacht's pre-purchase survey, the defendant issued a recreational marine insurance policy (YMY YO9164510), with a $47,500 deductible for property damage, to Broadwater Marine at a District of Columbia address. Dkt. No. 6-1, Ex. 1 at 9-34. The insured period began on April 17, 2014, and ended on April 17, 2015. Id.

While sailing from Nassau to Fort Lauderdale in April 2014, the yacht experienced a sudden engine and power system failure, and became inoperable due to extensive generator, exhaust and power systems damage. Dkt. 6-1 at ¶ 5. This led to cancellation of the charter contract and extensive repair of the yacht during the following year. Id. at ¶¶ 6, 7.

By a policy amendment effective July 10, 2014, Broadwater Marine's address of record changed to a Milwaukee, Wisconsin address. Id. at ¶ 2, Ex. 1

2

at 21. The plaintiffs gave defendant timely notice of the April incident. On August 29, 2014, the defendant informed the plaintiffs that it was denying coverage, because the generator failure pre-dated the policy period. Id. at ¶ 9, Ex. 2.

In September 2014, the defendant withdrew the coverage denial and provided the plaintiffs with a proof-of-loss form, which plaintiffs timely completed. Id. at ¶ 10. During October, ACE requested additional damage documentation, access to the yacht for inspection, and an examination under oath. Id. at ¶ 11.

In November 2014, while at Bahia Bar Marina in Fort Lauderdale, the yacht's hull and propulsion system were damaged, necessitating additional repairs. Id. at ¶ 12. Responding to the defendant's requests for information, the plaintiffs provided extensive documentary evidence regarding the April incident. Id. In January 2015, the defendant requested information regarding the November 2014 Bahia Bar Marina incident and a "complete, detailed sworn proof of loss." Id. at ¶ 14, Ex. 7 at 55-56.

In March of 2015, the defendant again requested specific information the plaintiffs had not provided, as well as a complete detailed proof of loss with respect to the April 2014 incident. Id. at ¶ 15. The defendant stated that its "preliminary analysis" failed to establish a relationship between the charges for removing and installing shore power units and related components and the generator/exhaust failures; however, "[o]ur investigation remains ongoing and

3

we will be happy to consider any further documentation substantiating these charges." Id. at ¶ 15, Ex. 8 at 58.

On May 22, 2015, the plaintiffs sent the defendant a revised, and more detailed, proof of loss for the April incident and additional documents regarding the November incident, and they asked the defendant to enter into a tolling agreement. Id. at ¶ 16. The plaintiffs also stated:

> *[t]o the extent of any disputed portion of this claim, the insured is also making a request for arbitration so that we can get resolution of any disputed amounts without further delay.*
>
> Please give me a call so that we can discuss wrapping up this claim, payment on the undisputed portion, the tolling agreement, and *the process and location for the arbitration to resolve any disputed issues.*

Id., at ¶ 16, Ex. 9 at 61 (emphasis added).

In a June 9, 2015 letter, the defendant "*rejected without prejudice*" the May 2015 revised proof of loss for the April incident due to insufficient detail. Id. at ¶ 17, Ex. 10 at 63. The defendant stated:

> Please be advised that ACE cannot issue payment at this time. Additionally, we must insist that all terms/conditions of the contract of insurance be complied with including, but not limited to, those provisions addressing time and limitations vis-à-vis same. ACE must decline your request to enter into a tolling agreement. As such, we wish to advise you that all time and limitations requirements, whether contractual, legal/statutory, or otherwise, remain in effect.
>
> ACE expressly reserves all rights, remedies, defenses available under the subject policy and applicable law. This letter does not waive or alter any provisions of the policy. Neither this letter nor ACE's actions in continuing to investigate the subject loss is to be

4

>       construed as an admission of coverage or as a waiver
>       of any right, remedy, or defense that may be available
>       to ACE.

Id.

On June 23, 2015, the plaintiffs provided the defendant with a further revised proof of loss for the April incident. Id. at ¶ 18, Ex. 11. That same day, the plaintiffs received a letter from the defendant, stating that while the yacht's loss-related repairs due to the November incident were less than the $47,500 deductible, it would pay $800 for diver inspections, which it considered an investigative cost for damage assessment. Id. at ¶ 19, Ex. 12. On June 24, 2015, the defendant sent the plaintiffs a check in the amount of $800 for the November incident, representing what the defendant asserted it owed on the claim. Id. at ¶ 20.

On June 24, 2015, the plaintiffs served the defendant with a Notice of Arbitration Pursuant to CPR Institute for Dispute Resolution Rules for Non-Administered Arbitration. Id. at ¶ 21, Ex. 13. The CPR Institute for Dispute Resolution Rules for Non-Administered Arbitration requires a response to a Notice of Arbitration within twenty days of receipt of the notice. Id. at ¶ 22.

The defendant responded with a letter dated July 31, 2015, stating that the policy's "arbitration clause could not be properly invoked to require arbitration on the claim that was initially reported with an April 2014 date," because the policy's one-year suit limitation clause required the plaintiffs to make the arbitration request within one year of the date of loss or damage. Id. at ¶ 22, Ex. 14. The defendant also rejected the plaintiffs' most recent proof of

5

loss for the April incident, stating that every sworn proof of loss the plaintiffs had provided for that claim had failed to specify the exact date of the generator/exhaust incident. The defendant invited the plaintiffs to correct the deficiencies and resubmit another revised proof of loss. Id.

The defendant also stated that its investigation regarding the November claim did not reveal a covered loss because (1) with respect to the hull, the damage did not exceed the policy deductible, and (2) with respect the propeller, no problem was found with the propeller shafts and reconditioning the propellers was part of the yacht's routine maintenance. Id. at 82. In closing, the defendant stated that the plaintiffs should contact it with any questions regarding its position on their arbitration request and/or provide any additional information for consideration with their claim or reconsideration of the arbitration request. Id.

On September 3, 2015, the plaintiffs filed a complaint in Milwaukee County Circuit Court, asserting claims for breach of contract, equitable estoppel and breach of the duty of good faith and fair dealing. Dkt. No. 1-1. Invoking the court's diversity jurisdiction, the defendant removed the action to this federal district court on October 8, 2015, dkt. no. 1, and, in lieu of an answer, filed a motion to stay the litigation and compel arbitration, dkt. no. 5.

## II. Analysis

The FAA governs the "enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts." Int'l Ins. Co. v. Caja Nacional de Ahorro y Seguro, 293 F.3d 392, 395 (7th Cir.

6

2002) (citation omitted). The FAA states, "an agreement in writing to submit to arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The enforcement of arbitration agreements is supported by a federal policy favoring arbitration. See Nitro-Lift Techs., L.L.C. v. Howard, 133 S. Ct. 500, 503 (2012). "Although it is often said that there is a federal policy in favor of arbitration, federal law places arbitration clauses on equal footing with other contracts, not above them." Janiga v. Questar Capital Corp., 615 F.3d 735, 740 (7th Cir. 2010) (citing Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 70 (2010)).

When an issue in controversy is covered by a valid arbitration agreement, the FAA requires courts to stay or dismiss proceedings and to compel arbitration. 9 U.S.C. §§ 3, 4; AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011). The law mandates that courts must uphold and enforce arbitration agreements according to their terms unless they are invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." Id. at 339.

To obtain an order to compel, the moving party must show: "(1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." Druco Rests., Inc. v. Steak N Shake Enters., Inc., 765 F.3d 776, 781 (7th Cir. 2014). "[Q]uestions of arbitrability must be addressed with a healthy regard for

7

Case 2:15-cv-01193-PP   Filed 03/24/17   Page 7 of 11   Document 12

the federal policy favoring arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Thus, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Id. at 24-25.

In deciding whether parties agreed to arbitrate an issue, courts generally use ordinary state-law principles that govern the formation of contracts to decide whether they formed an arbitration agreement. Janiga, 615 F.3d at 742 (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). Pursuant to the policy declarations page, the court must apply Wisconsin law when determining whether the parties agreed to arbitrate the issues raised in the complaint.

Wisconsin courts hold that contract interpretation is a question of law, Estate of Kriefall v. Sizzler USA Franchise, Inc., 342 Wis. 2d 29, 47-48, 816 N.W.2d 853, 862 (Wis. 2012), and they construe contracts to determine and give effect to the intentions of the parties. Id. Parties are presumed to express their intentions in the language of the contract. Id. "Where the language of a contract is unambiguous and the parties' intentions can be ascertained from the face of the contract, [the courts] give effect to the language they employed." Id.

In this policy, the parties agreed to arbitrate "any controversy or claim, . . . arising out of or related to this Policy, the interpretation, enforcement or

8

breach thereof, or the handling of any claim involving this Policy." Dkt. No. 6-1, 33. The policy provides for the arbitration of many types of claims, including claims based on "contract, tort, statute, or other legal or equitable theory."

The plaintiffs do not contest the basic elements of the motion to compel, and as a matter of law, the unambiguous contract language establishes that the plaintiffs' claims relate to the policy. They are therefore subject to arbitration.

The plaintiffs contend that the defendant waived its right to arbitrate by ignoring their May 2015 arbitration request and failing to respond in a timely manner to their Notice of Arbitration, relying primarily on <u>Growtech Partners v. Accenture, LLP</u>, 118 F. Supp. 3d 920, 932 (S.D. Tex. 2015) and <u>Brown v. Dillard's, Inc.</u>, 430 F.3d 1004 (9th Cir. 2005). The defendant counters that (1) its response was appropriate because the plaintiffs' arbitration request regarding the April claim was untimely, and (2) the November claim fell below the policy deductible. The defendant also maintains that the plaintiffs misinterpret <u>Growtech</u> and <u>Dillard's</u> because the defendants in those cases refused to participate in arbitration without a legal basis. Neither <u>Growtech</u> nor <u>Dillard's</u> is binding authority on this court.

In arguing waiver, the plaintiffs focus on the defendant's pre-litigation conduct—defendant's position that the notice of arbitration was untimely because it was not filed within a year of the date of the loss and that the damages attributable to the November claim fell below the deductible.

9

The Seventh Circuit rejected a similar argument regarding pre-litigation conduct in Welborn Clinic v. MedQuist, Inc., 301 F.3d 634, 647 (7th Cir. 2002). In Welborn, the plaintiff argued that "defendant's withholding medical records, termination of service, and rejection of attempts informally to negotiate the dispute" constituted an implicit waiver of the right to compel arbitration once the plaintiff filed suit. Id. The Seventh Circuit acknowledged that a "lengthy delay can lead to an implicit waiver of arbitration;" it found however, that "such delay is normally evidenced by substantial participation in the opposing party's litigation." Id. The defendant in Welburn filed its motion to compel less than two months after the plaintiff filed its lawsuit. Similarly, the defendant here timely filed the notice of removal and moved to stay the litigation and compel arbitration in lieu of an answer. Dkt. No. 5.

Several months after the Seventh Circuit decided Welborn, the Supreme Court suggested that the waiver decision should be made by the arbitrator. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85-86 (2002)). In Howsam, the Supreme Court wrote that the "presumption is that the arbitrator should decide 'allegations of waiver, delay, or a like defense to arbitratility.'" Id. at 84, 123 S. Ct. at 592 (quoting Moses v. Cone, 460 U.S. at 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765). Most recently in BG Group, PLC v. Republic of Argentina, the Supreme Court stated that "the courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular preconditions for the use of arbitration," such as "claims of waiver, delay, or a like defense to arbitrability." 134 S. Ct. 1198, 188 L. Ed. 2d

10

220 (2014). See also Johnson v. W. & S. Life Ins. Co., 598 F. App'x. 454, 456 (7th Cir. 2015) ("The Supreme Court has applied this rule consistently, making clear in more recent decisions that federal courts must presume that the parties intended arbitrators to decide whether a party has complied with time limits and other arbitrational prerequisites.") Mindful of this language and in the absence of any controlling authority that would otherwise find a waiver based on similar pre-litigation conduct, the court will enforce the arbitration clause.

### III. Conclusion

The court **GRANTS** the motion to stay and compel arbitration. With nothing left for this court to decide, the court will close the case for administrative purposes without prejudice to the parties' ability to reopen this matter.

Dated in Milwaukee, Wisconsin this 24th day of March, 2017.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge